IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:23-cv-00426 ) ) JUDGE RICHARDSON |
| VANDERBILT UNIVERSITY and VICTORIA R. PICOTT, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court is the motion to dismiss (Doc. No. 24, "Motion") filed by Defendant Victoria R. Picott ("Coach Picott") seeking dismissal of the claims against her under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1] The Motion was supported by an accompanying memorandum of law (Doc. No. 25, "Memorandum"). Defendant Vanderbilt University ("Vanderbilt") also filed a motion to dismiss (Doc. No. 22) and an accompanying memorandum of law (Doc. No. 23). However, this opinion analyzes only Coach Picott's Motion, leaving Vanderbilt's motion for a subsequent separate order and opinion. Plaintiff filed a response to Coach Picott's Motion (Doc. No. 41, "Response") to which Coach Picott filed a reply (Doc. No. 45). For the reasons stated herein, the Motion is GRANTED, and the claims against Coach Picott will be dismissed.

---

[1] The Court herein uses "Plaintiff" to refer to Jane Doe and uses "Coach Picott" to refer to the Defendant.

## BACKGROUND[2]

Melanie Balcomb became the head coach of Vanderbilt's women's basketball program in 2002. (Doc. No. 1 ¶ 62). She "brought with her" Coach Picott to serve as the program's assistant coach responsible for post-player development. (*Id.* ¶ 63). Coach Picott had been a college women's basketball coach for over a decade at various universities before starting her tenure at Vanderbilt. (*Id.* ¶ 63). Around August 8, 2006, before Plaintiff had begun her senior year of high school, Coach Picott and the assistant coach for recruiting offered Plaintiff a "full-ride" athletic scholarship to play basketball for the program. (*Id.* ¶ 64). Plaintiff accepted the scholarship and began her basketball and student career at Vanderbilt in July of 2007. (*Id.* ¶ 76). While at Vanderbilt, Plaintiff experienced hardships as her family members became ill and she herself suffered from illness. (*Id.* ¶¶ 80-82.) Plaintiff confided in Coach Picott, who reassured her that she had a "family" with the program. (*Id.* ¶ 85). Plaintiff and Coach Picott grew close and developed an emotional bond during this period, and Coach Picott ingratiated herself with members of Plaintiff's family. (*Id.* ¶¶ 86-88). Plaintiff and Coach Picott also began to pray together when Coach Picott's mother became ill during Plaintiff's senior year. (*Id.* ¶¶ 89-90).

On the basketball court, Coach Picott came into close physical contact with players while demonstrating proper footwork and positioning. (*Id.* ¶¶ 94-95). Coach Picott also was viewed by players as "rational" and would stand up to the "tough coaching" employed by Coach Balcomb. (*Id.* ¶¶ 107-110). After playing for the basketball team but before she graduated from Vanderbilt,

---

[2] The facts herein are taken from the Complaint. For purposes of the instant Motion, the facts in the Complaint are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

Plaintiff was encouraged by Coach Picott, and invited by the program, to continue as a graduate assistant. (*Id.* ¶ 112). This entitled Plaintiff to continue as a graduate student at Vanderbilt while helping out the basketball program but did not require her to compete as a player on the team. (*Id.* ¶¶ 112-117). She accepted this invitation and began her graduate-school classes on or about June 10, 2011. (*Id.* ¶ 122).

Coach Picott's mother passed away on June 17, 2011. (*Id.* ¶ 123). Coach Picott thereafter developed an interest in religion and asked Plaintiff to participate in bible study with her. (*Id.* ¶ 125). Plaintiff agreed, and they began a morning bible study during which they shared with one another more personal details of their lives. (*Id.* ¶¶ 128-131). In the fall of 2011, Plaintiff accepted an invitation from Coach Picott to work out together during the mornings. (*Id.* ¶ 133). During these workouts, Coach Picott would comment on Plaintiff's physical appearance and participate in workouts that required physical touching. (*Id.* ¶ 134). Coach Picott also began telling Plaintiff that she was sexually attracted to her. (*Id.* ¶ 144).

Coach Picott and other female staff members invited Plaintiff to use the female coaches' locker room, which was more convenient for Plaintiff to use. (*Id.* ¶ 147). Once Plaintiff started using the locker room, Coach Picott would bump into her or pretend to box her out.[3] (*Id.* ¶ 151). Coach Picott would also watch as Plaintiff changed clothes after they worked out and would change in front of Plaintiff. (*Id.* ¶ 152). Coach Picott opened the shower door to look at Plaintiff and comment on her physique. At one point, Coach Picott also placed her hand on Plaintiff's upper thigh when the two were sharing a car together. (*Id.* ¶¶ 153-54). At some point, Coach Picott kissed

---

[3] The reference here to boxing out Plaintiff plainly is a reference to the basketball tactic of optimally positioning oneself via-a-vis an opponent in order to maximizes the chances of grabbing a rebound in the event of a missed shot. It can, but does not necessarily, involve pushing one's backside against the opponent.

Plaintiff in a parked car in the 25th Avenue parking garage on Vanderbilt's campus. During this event, Plaintiff felt "paralyzed with the [sic] fear, embarrassment and confusion." (*Id.* ¶¶ 156).

Following this kiss, Coach Picott made sexual advances towards Plaintiff multiple times a day. (*Id.* ¶ 157). Coach Picott also began performing "sexual acts" on Plaintiff in the locker room or in hotel rooms when the team was traveling for away games. (*Id.* ¶ 161). At one point, an unidentified staff member of the program walked into the locker room while Coach Picott and Plaintiff were engaged in a sex act. (*Id.* ¶ 223). The staff member failed to report this activity to her supervisors or other authorities at Vanderbilt. (*Id.*). At one point, an unidentified program staff member also implicitly questioned Plaintiff about her relationship with Coach Picott. (*Id.* ¶ 224). The staff member did not report to her supervisors, or another authority at Vanderbilt, her concerns about that relationship. (*Id.*).

On or about March 17-21 in Plaintiff's hotel room in the Embassy Suites in Nashville, Plaintiff and Coach Picott had sexual intercourse. (*Id.* ¶ 167). After this encounter, Coach Picott performed sexual acts on Plaintiff "on a near-daily basis and multiple time a day." (*Id.* ¶ 168). Beginning in the summer of 2012, Coach Picott would work out with Plaintiff in Plaintiff's off-campus house. Coach Picott would also show up unexpectedly when Plantiff was out with friends, which "intimidated Jane Doe and caused Jane Doe even more anxiety." (*Id.* ¶ 170). Plaintiff expressed to Coach Picott that she thought her family would disown her if their relationship was discovered.

Jane Doe ultimately finished her studies at Vanderbilt and then moved to Pennsylvania to attend law school in August 2012. (*Id.* ¶ 176). Plaintiff and Coach Picott maintained a relationship, and Plaintiff traveled during the fall of 2012 to Ohio to attend a Vanderbilt basketball game there, where Coach Picott performed sexual acts on her in her hotel room. (*Id.* ¶ 179). In May 2013 Coach

Picott left Vanderbilt and became a personal trainer. (*Id.* ¶ 180). Coach Picott and Plaintiff continued to have sexual relations after Coach Picott left Vanderbilt University. (*Id.* ¶ 181).

Plaintiff suffered significant psychological harm and extreme emotional distress, including panic attacks, in the years following these encounters. (*Id.* ¶ 190). On April 28, 2022, Plaintiff began intensive trauma therapy, whereby she began to "realize and understand" that the damage she experienced was caused by Coach Picott's alleged abuse. (*Id.* ¶¶ 191-93). On October 13, 2022, Plaintiff called Coach Picott on FaceTime to end their "relationship." (*Id.* ¶ 196). During the call, Plaintiff confronted Coach Picott about the abuse, and Coach Picott repeatedly told Plaintiff that she was sorry. (*Id.*).

## PLAINTIFF'S COMPLAINT

Plaintiff initiated this lawsuit on April 27, 2023, by filing a ten-count complaint (Doc. No. 1, "Complaint"), which named both Vanderbilt (the institution) and Coach Picott (an individual) as defendants. In each of the ten counts, the claim is made against Vanderbilt. In five of them, the claim is made also against Coach Picott, while in the other five, the claim is made only against Vanderbilt. As for the five claims against Coach Picott, one of them is a federal claim (invoking this Court's original jurisdiction), while four are state-law claims (invoking this Court's supplemental jurisdiction). Specifically, Plaintiff's federal claim against Coach Picott is a claim under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq. ("Tile IX"). And her state-law claims against Coach Picott are claims for assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in a complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 167 L.Ed.2d 929 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652–53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018).

DISCUSSION

The crux of Plaintiff's Complaint is that she was sexually assaulted by Coach Picott while she was a member of the Vanderbilt women's basketball program and a graduate student at Vanderbilt University. The Complaint conveys that the sexual relationship began at some point in 2012, with the first instance of sexual intercourse occurring around March 17-21, 2012. While the Complaint does not provide details as to how long and to what degree the sexual relationship continued, it states that the sexual relationship lasted even after Coach Picott left Vanderbilt, which occurred in May 2013. The date (or even general timeframe) of the most recent sexual encounter is not provided in the Complaint, but Plaintiff alleges that in April 2022, she realized (via trauma therapy) that the sexual relationship was abusive in nature and that what Coach Picott did to her should be classified as sexual assault. The Court will first analyze the federal (Title IX) claim and then turn to the state-law claims.[4]

***Federal Claim: Title IX Claim***

Title IX provides in pertinent part, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

---

[4] As indicated earlier, each of Plaintiff's claims against Coach Picott are brought also against Vanderbilt (along with five other claims that are brought solely against Vanderbilt). As the instant Motion is brought solely by Coach Picott, the Court herein leaves for another day the ten claims against Vanderbilt.

under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Title IX does not authorize private suits against individuals (as opposed to institutions or organizations), as made plain in cases like *Snyder-Hill v. Ohio State Univ.,* 48 F.4th 686 (6th Cir. 2022). In *Snyder-Hill*, a case on which Plaintiff herself relies, the court wrote, "In a Title IX case, a plaintiff's cause of action is against the school based on the school's actions or inactions, not the actions of the person who abused the plaintiff." *Snyder-Hill* at 702. And in *Soper v. Hoben*, 195 F. 3d 845 (6th Cir. 1999), the court likewise clearly held that Title IX does not extend liability to individuals. That decision made clear that the focus of a Title IX claim is on the *institution* that is the recipient of federal funds, not on individual wrongdoers.

In the instant case, Plaintiff's Title IX claim must be dismissed as a matter of law insofar as it is brought against Coach Picott. In a footnote in her Response, Plaintiff argues that this claim should not be dismissed because "to the extent that Doe's Title IX claim is asserted against Picott in her official capacity . . . , such a claim can be read as being coterminous with the Title IX claim against her employer." (Doc. No. 43 at 23 n.9). Jane Doe did not mention Coach Picott's "official capacity" anywhere in the Complaint, and—in part because it is implausible that Coach Picott was acting in her official capacity *in undertaking the sexually assaultive conduct alleged in the Complaint*—it is not reasonably inferable from the Complaint that Plaintiff intended to sue Coach Picott in her official capacity (alternatively or additionally to her individual capacity). Jane Doe filed her Title IX claim against Defendant personally, which is not legally viable. Trying to alter the claim in a footnote in the Response does not cure this deficiency, because this is not the proper way to amend a complaint.

Moreover, even assuming that an employee/agent/official of an institution can be sued in his or her official capacity under Title IX, such an official-capacity claim would be the equivalent

of a claim against the institution. *See Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1021 n.4 (7th Cir. 1997) (stating in connection with a Title IX claim that "an official capacity suit generally represents only another way of pleading an action against an entity of which an officer is an agent" and that "as long as the . . . entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal quotation marks and brackets omitted). Such an official capacity claim is, therefore, redundant of the claim against the entity. *See id.* (*"*Because [the plaintiff's] suit is also against the entity . . . her claims against the principal and assistant principal, in their official capacities, are redundant."). And such redundancy generally subjects the official-capacity claim to dismissal. *Rodgers v. Cnty. of Oakland*, No. 18-CV-12832, 2019 WL 3777031, at *4 (E.D. Mich. Aug. 12, 2019) ("Courts within the Sixth Circuit consistently dismiss official-capacity claims against municipal officials that are duplicative of claims asserted by the plaintiff against the municipal entity itself.") (decided in the context of a claim under 42 U.S.C. § 1983). So even if Plaintiff had pled an official-capacity Title IX claim against Coach Picott, it likely would have been subject to dismissal anyway.

For these reasons, Plaintiff's Title IX claim is subject to dismissal with respect to Coach Picott.

***State Law Claims***

Plaintiff has alleged four state law tort claims against Coach Picott. These are assault, battery, intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). These torts are governed by Tennessee's one-year statute of limitations. *See*

Tenn. Code Ann. § 28-3-104(a)(1)(A).[5] Coach Picott argues that the alleged tortious conduct occurred more than a year before this suit was filed and that therefore Plaintiff has not timely brought these claims. Coach Picott has accordingly moved to dismiss these claims because (according to Coach Picott) they are time-barred.

The initial inquiry here is whether a motion to dismiss is the proper vehicle to raise a statute of limitations defense, which is an affirmative defense. Typically, "[s]tatute-of-limitations defenses are [more] properly raised in Rule 56 motions [for summary judgment], rather than Rule 12(b)(6) . . . motions, because '[a] plaintiff generally need not plead the lack of affirmative defenses to state a valid claim.'" *Busler v. Nissan N. Am., Inc.*, 688 F. Supp. 3d 668 (M.D. Tenn. 2023) (quoting *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 567 (E.D. Tenn. 2019)). However, if it is "'apparent from the face of the complaint that the time limit for bringing the claim[s] has passed,' then the plaintiff, if he wishes to avoid dismissal, has an 'obligation to plead facts in avoidance of the statute of limitations defense.'" *Busler v. Nissan N. Am., Inc.*, 688 F. Supp. 3d 668 (M.D. Tenn. 2023) (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). When "the allegations in the complaint affirmatively show that a claim is time-barred," then "dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

---

[5] Under Tennessee law, tort claims alleging "injury to a person" are subject to the one-year limitations period under this statute. *See Wilson v. Delta Airlines, Inc.,* 2010 WL 2836326, at *3 (W.D. Tenn. July 19, 2010)("Plaintiff's claims of assault, battery, and intentional infliction of emotional distress are all subject to the one-year statute of limitations" set forth in a prior version of the statute identical to the instant version in all respects material here); *Putnam v. Leach,* 572 S.W.3d 605 (Tenn. Ct. App. 2018) ("In Tennessee, the statute of limitations requires a plaintiff to file a claim for personal injuries within one year of the accrual of the cause of action.").

The Court finds that the allegations in the Complaint affirmatively show that the claims are time-barred. The Complaint, while stating that the alleged actions began in 2012, does not clearly state when these actions ceased. However, it is clear that they ceased years before the winter/spring of 2022. This in itself suggests that there would have to be some sort of tolling of the limitations period in order for these claims to be valid.[6] Therefore, given that the Complaint shows that these claims are time-barred, it is appropriate at the motion-to-dismiss stage to consider the limitations defense raised by Defendant. (Doc. No. 1 ¶ 203).

**Statute of Limitations and the Discovery Rule**

The tort claims that Plaintiff has alleged sound entirely in state law and are therefore governed by Tennessee statutes and caselaw, including state statutes of limitations. *See Electric Power Bd. Of Chattanooga v. Monsanto Co.,* 879 F.2d 1368, 1375 (6th Cir. 1989). Under Tennessee law the limitations period for the claimed torts is one year. Tenn. Code Ann. § 28-3-104(a)(1)(A). The Complaint is unclear on the last date of any sexual encounter between Jane Doe and Defendant. However, the Complaint is clear that years passed between the last alleged assault and the winter/spring of 2022. And another year (approximately) would have passed between the winter/spring of 2022 and the filing of the Complaint on April 27, 2023 to initiate this case. So in context it is clear that (i) Plaintiff's claim falls outside the applicable one-year limitations period unless the running of the limitations period is postponed until within one year prior to April 27, 2023, and (ii) such postponement is possible if the running begins not as of the time of the last sexual assault, but instead years later (again, within one year prior to April 27, 2023). And the only

---

[6] In the Complaint, without explicitly so stating, Plaintiff insinuates that a tolling theory should apply to her claims due to her recent realization that the activity was abusive. Plaintiff states that her claims are timely because she filed this suit within one year of this realization.

possible path for Plaintiff to obtain such postponement is via application of the so-called discovery rule, which Plaintiff asserts in her Response (though not expressly in the Complaint itself).

The discovery rule essentially tolls a statute of limitations until a plaintiff discovers, or should reasonably be expected to discover, an injury and the identity of the defendant who caused the injury. *See Wyatt v. A-Best, Co.,* 910 S.W.2d 851, 855 (Tenn. 1995). The rule was first introduced in Tennessee in *Teeters v. Currey*, 518 S.W.2d 512 (Tenn. 1974). In *Teeters*, the court found that patients who discovered medical injuries after their opportunity to sue had expired deserved leniency and a chance to get relief. In departing from the previously established "occurrence rule" (whereby the limitations period started running when the injury occurred, whether or not the injury was known to the plaintiff), the court found it "difficult to embrace a rule of law . . . requiring that [a plaintiff] sue to vindicate a non-existent wrong, at a time when the injury was unknown and unknowable." *Teeters* at 515.

Plaintiff alleges that she discovered that she was sexually abused by Coach Picott only when she came to that realization through trauma therapy that began on April 28, 2022 (which is within the applicable one-year limitations period). Until such realization, she essentially posits, she did not know she was abused. According to her argument, her (delayed) realization that (according to her) what she experienced constituted sexual abuse amounted to the "discovery of an injury," such that the limitations period did not start running[7] until such realization. Plaintiff

---

[7] The discussion here necessitates the making of an observation about terminology. As the undersigned noted years ago, "[a] limitations period generally begins to run from the time the cause of action 'accrued.'" Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1036 (1997). Yet, "the date of accrual is not necessarily synonymous with the date that the limitations period begins to run; the limitations period begins to run from the date of accrual only to the extent that applicable law says so." *Id*. "As it turns out, applicable law usually does say so; by judicial decision, by a general statute relating to the running of limitations periods, or by language in the particular statute of limitations itself, a statute's limitations period usually runs from the date of accrual." *Id*. at 1036-37. For this reason, federal courts often equate the two dates, sometimes without explaining why the two are the same (*i.e.*, why, under applicable

cites numerous studies and the *Snyder-Hill* opinion to support her proposition that people sometimes are unable to recognize something as abuse until many years after it takes place. The Court is aware of the changing understanding of trauma and abuse and how it comes to be recognized. But the Court finds that Plaintiff's argument is unsupported by current Tennessee law and—more to the point given the role of the *Erie* doctrine here—would not be accepted by the Tennessee Supreme Court if presented to it.[8]

---

law, the date the limitations period starts to run is indeed the date of accrual). In other words, courts (including some cited herein) often use the term "date of accrual" as shorthand for "date on which the limitations period began to run," even if they do not necessarily mean to specifically convey that the date the limitations period starts to run is indeed the date of "accrual" as that technical term is properly construed. *See, e.g., D.S.S. by & through McDowell v. Prudential Ins. Co. of Am.*, No. 21-5315, 2022 WL 95165, at *4 (6th Cir. Jan. 10, 2022) ("[On December 31, 2014, the cause of action accrued . . . and the [one-year] limitations period began to run. Thus, the district court did not err in determining that the cause of action accrued on December 31, 2014, and that the limitations period ran one year after that date."); *Bishop v. Children's Ctr. For Dev. Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (noting that while for some statutes the statute of limitations is "borrowed from state law, the actions accrue and the statutory period begins to run according to federal law"). As a general matter, this may not foster any confusion. But where the date the limitations period begins to run is determined by the discovery rule, that date is *not* generally the date of accrual, and so in this context the two dates should not be equated or referred to interchangeably. *See, e.g., Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (contrasting the "standard rule" of accrual—where "the limitations period commences when the plaintiff has a complete and present cause of action"—to the "discovery rule." (internal quotation marks omitted)). The Court endeavors herein to adhere to this principle, referring to the beginning of the running of the limitations period without reference to the concept of accrual. The Court notes that it declines to set forth here a definition of the time of "accrual"—which, again, in a given case may or may not equate to the time that the limitation period begins to run— is that term is properly construed when used in a technical sense.

[8] This doctrine was announced in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). "Under the *Erie* doctrine, a federal court sitting in diversity applies 'the substantive law of the forum state and federal procedural law.'" *Bonasera v. New River Elec. Corp.*, 518 F. Supp. 3d 1136, 1151 (S.D. Ohio 2021) (quoting *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)). The Sixth Circuit has explained:

> In diversity cases such as this, [the *Erie* doctrine requires that] we apply state law in accordance with the controlling decisions of the state supreme court. If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state] Supreme Court would decide otherwise."

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citations and footnote omitted) (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir.1995)). The *Erie* doctrine is applicable here because to the Court's knowledge, the Tennessee Supreme Court has not

From its review of relevant Tennessee state law decisions, the Court finds that none support Plaintiff's argument that a delay in "recognizing" sexual activity as abuse until years after it occurred renders the discovery rule applicable so as to delay the running of the limitations period. As previously stated the discovery rule was first applied (in *Teeters*) in the medical malpractice context. While the discovery rule's applicability has expanded to other kinds of tort claims "a plaintiff is not entitled to delay filing until all injurious effects or consequences of the actionable wrong are actually known." *See Wyatt* at 855. Several cases demonstrate the contours of the application of the discovery rule. *See Foster v. Harris,* 633 S.W.2d 304 (Tenn. 1982) (finding the discovery rule applicable when the plaintiff suffered from a disease for more than a year but did not know it was transmitted to him by his dentist); *Potts v. Celotex Corp.* 796 S. W. 2d 678 (Tenn. 1990) (finding the discovery rule applicable due to a plaintiff's discovery of mesothelioma years after a diagnosis for asbestosis); *C.S. v. Diocese of Nashville*, 2008 WL 4426891 (Tenn. Ct. App. Sept. 30, 2008) (declining to apply the discovery rule when after 25 years the plaintiff claimed the diocese had knowledge of a priest's propensity to molest children).

In *Doe v. Coffee County Bd. Of Educ.*, 852 S.W.2d 899 (Tenn. Ct. App. 1992), Jane Does claimed that they did not become fully aware of a teacher's sexual abuse of them until several years after the abuse occurred. They argued, like Plaintiff, that the discovery rule should apply (so as to delay the date on which the limitations period begins to run beyond what it otherwise would have been) and that—given the length of the delay they claimed was appropriate—they should not be time-barred from bringing their claims against the teacher. The court did not agree. It reasoned:

> The fact that both Jane Doe B and Jane Doe D insist that they did not become fully aware that they had been 'emotionally harmed' until some time after May 1989 is not enough to toll the statute of limitations. They had known for quite some time

---

addressed Plaintiff's argument for the applicability of the discovery rule when the plaintiff suffers a delay in recognizing conduct as abusive.

that Mr. Percy had injured them, and under our version of the discovery rule they cannot delay filing suit until they became fully aware of all the injurious effects of Mr. Percy's conduct.

*Id.* at 904.[9] In making its determination, the court found that although the alleged victims tried to forget about their experiences, they still knew that the injurious activity had occurred at the time it took place. The court wrote, "Jane Doe B stated that the experience was 'something I have tried so hard to forget' and that she 'didn't want anyone else to ever find out that anything had happened'" and "her psychologist also stated that she remained 'consciously aware that she had intercourse with the man' but that she 'had tried to avoid dealing with the facts and the feelings.'" *Id.* at 905. The court further found that "[b]oth Jane Doe B and Jane Doe D concede that they knew that they had been victims of Mr. Percy's wrongdoing even while the acts were occurring. Jane Doe B stated that she remembered 'feeling very humiliated and very dirty and scared'… and Jane Doe D stated that she was 'flustered,' 'humiliated and embarrassed,'" after the alleged assault took place. *Id.* at 905.

---

[9] The reference in the quoted passage to "toll[ing] the statute of limitations" compels the Court to make another observation. This one is to highlight that a refusal to apply the discovery rule is a refusal to "toll" the statute of limitations" in only one of the two senses that the term "toll[ing]" is used. As the undersigned noted long ago:

> [t]he term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Richardson, *supra* note 7, at 1039-40. In *Coffee County*, the court clearly was referring to "toll[ing]" in the former sense, *i.e.*, the postponement of the date on which the limitations period otherwise would begin to run.

In the present case Plaintiff has stated in her Complaint that she was "terrified, felt trapped and paralyzed" when Coach Picott performed sexual acts on her. (Doc No. 1 ¶ 163). She also stated that she "mistakenly experienced feelings of complicity with her abuser and of responsibility and guilt for the abuse." (*Id.* ¶ 189). Without wishing to blame or criticize Plaintiff in any way or to dispute that one's understanding of events like these can grow over time, the Court finds that, like the plaintiff in *Coffee County*, Plaintiff was aware of wrongdoing when the acts were occurring. True, Plaintiff "repressed memories of the abuse, was in denial that any abuse took place, was unable to accept that the events had occurred and was unable to articulate them." (*Id.* ¶ 189). But given her alleged reaction to the events at the time they occurred, the Court finds that Plaintiff did have a notion at that time—and for "years" thereafter prior to one year in advance of the filing of the Complaint[10]—that something injurious was taking place. That the full emotional significance of the sexual encounters—or that they could (according to her Complaint) appropriately be categorized specifically as abusive— had not become clear to Jane Doe does not allow her to "delay filing suit until [she] became fully aware of *all the injurious effects*" of Defendant's actions. *Coffee Cnty.*, 852 S.W.2d at 904 (emphasis added). The Court does not see any basis to conclude that *Coffee County* is not indicative of how the Tennessee Supreme Court would look at the issue—

---

[10] It is significant that Plaintiff's Complaint makes clear that she was aware that something injurious was taking place in the years after the events took place *even if not exactly at the time of the* events. Why? Because if Plaintiff did not realize that something injurious had taken place until sometime after the events, perhaps the discovery rule could be applicable so as to delay the beginning of the running of the limitations period for *some* period of time (i.e., until she did have such realization). But even if so, application of the discovery rule would not delay the beginning of the running of the limitations period as much as Plaintiff would need in order to be deemed to have filed within the one-year limitations period. Even if delayed pursuant to the discovery rule, the running of the limitations period was delayed only until Plaintiff gained an awareness the something injurious had happened—and, while a timeframe was not specifically emphasized by Plaintiff, the Complaint makes clear that this was more than one year prior to the filing of the Complaint.

especially (but not solely) because the Court perceives the reasoning of *Coffee County* as sufficiently sound to be worthy of adoption by any court.

And so the Court follows the reasoning of *Coffee County*: the applicability of the discovery rule does not extend to circumstances like those in *Coffee County*, which are not materially distinguishable from those in Plaintiff's case.

The Court acknowledges the multitude of sources that Plaintiff has invoked in her Complaint and Response outlining the changing psychological understanding of trauma and abuse. (*See e.g.,* Doc. No. 43 at 6). These developments are worthy of consideration, and there is clearly a lot of research and changing views in this field; perhaps some of these could cause a state supreme court to reconsider, at least at some point, the scope of the applicability of the discovery rule. However, it is not this Court's role to extend the discovery rule to circumstances in which, in the Court's view, the Tennessee Supreme Court currently would not apply it.

True, things could change in that regard. The Tennessee Supreme Court could issue a ruling expressly announcing just such an extension. Or the Tennessee General Assembly could enact new legislation changing the discovery rule[11] in a manner that indicates that the Tennessee Supreme Court would, in accordance with the legislation, extend the discovery rule to circumstances like

---

[11] It is not just courts, but also legislatures, that have the power to change the law with respect to the "discovery rule." In fact, in 2016, the Tennessee General Assembly did so in the specific context of civil actions based on "child sexual abuse" committed against the plaintiff when the plaintiff was a minor. *See* Tenn. Code Ann. § 28-3-116. In its current form, that statute provides (among other things) for different limitations periods under different circumstances, and under certain circumstances runs the limitations period "from the time of discovery." *Id.* § 28-3-116(b). The statute also gives a specific definition of "discovery": "'[d]iscovery' means when the injured person becomes aware that the injury or illness was caused by child sexual abuse. Discovery that the injury or illness was caused by child sexual abuse shall not be deemed to have occurred solely by virtue of the injured person's awareness, knowledge, or memory of the acts of abuse." *Id.* § 28-3-116(c). The statute is inapplicable in the present case, though, because Plaintiff was not a minor at the times at issue. And the statutes provisions regarding "discovery" would provide Plaintiff here no assistance in any event because they contemplate tolling based on a delay in the discovery of the *causal connection* between an already known injury and child sexual abuse, whereas in this case Plaintiff seeks tolling based on a delay in the discovery of the *injury*.

Plaintiff's. Or perhaps other changing circumstances (such as, for example, new opinions from the Tennessee Court of Appeals) would suggest that the Tennessee Supreme Court would be inclined to make that extension. But for now, the Court finds no basis to conclude that the Tennessee Supreme Court would pronounce such an extension if hypothetically it were asked to do so.

Ultimately, while the benefits and drawbacks of this extension can be debated, the decision to update the discovery rule is not for this Court to make.[12] Therefore, while sensitive to changing ideas about abuse, trauma and memory the Court declines to apply the discovery rule to Plaintiff's case unless and until it finds that so doing is consistent with the *Erie* doctrine.

## CONCLUSION

For the foregoing reasons, the Court finds that a Title IX claim cannot be maintained against an individual, and so Plaintiff's Title IX claim against Coach Picott is DISMISSED. The Court also finds that the Complaint affirmatively shows that Plaintiff's state tort claims against Defendant are barred by the applicable statute of limitations. Accordingly, they are DISMISSED as well.

All claims against Coach Picott having been dismissed, the Clerk is DIRECTED to terminate her as a Defendant.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[12] It should be noted that as of March 2024, a bill allowing adult victims three years to file civil suits reportedly has been sent to the Governor's desk. *See* Blaise Gainey, *Extension of Tennessee's statute of limitations for sexual assault civil court cases goes to governor's desk*, WPLN News (March 19, 2024), https://wpln.org/post/extension-of-tennessees-statute-of-limitations-for-sexual-assault-civil-court-cases-goes-to-governors-desk/.